| UNITED STATES DISTRICT COURT | WESTERN DISTRICT OF TEXAS MIDLAND/ODESSA DIVISION |

| | |
|---|---|
| JACOB ROSE, Individually and On Behalf of All Others Similarly Situated; DERRICK BOYD; ROBERTO CASTANEDA; GERMAYNE EDMOND; STEVEN EDMOND, JR.; KELAND GIPSON; REGINALD HOGG; JIMMY KUHN; SIONE LATU; JUSTIN LEWIS; HECTOR SALAZAR; VEHIKITE TAULAKI; HAFOKA OLIE; GODFREY WILLIAMS and TEDDY WOODS, | § § § § § § § § § § § § § § |
| *Plaintiff(s)*, | § § § |
| v. | § § |
| GRAPPLER PRESSURE PUMPING, LLC, | § § § |
| *Defendant(s)*. | § § |

No. _____

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff Jacob Rose (referred to as "Rose") brings this action under 29 U.S.C. § 2104(a)(5) individually and on behalf of all similarly situated current and/or former employees of Legend Energy Services, LLC (referred to as "LES") who were terminated without cause or suffered other employment loss as part of or as the result of a plant closing or mass layoff ordered by the company on or about May 15, 2021, and

within thirty (30) days of that date and who were not provided with advance written notice of the plant closing or mass layoff as required by the Worker Adjustment Retraining and Notification Act, 29 U.S.C. §§ 2101-2109 ("WARN Act").

Rose, individually and on behalf of all similarly situated, bring this action against Defendant Grappler Pressure Pumping, LLC (referred to as "GPP") because, as successor to LES under federal labor law, it is jointly and severally liable to them for LES's violation of the WARN Act.

Plaintiff Derrick Boyd (referred to as "Boyd"); Plaintiff Roberto Castaneda (referred to as "Castaneda"); Plaintiff Germayne Edmond (referred to as "Edmond"); Plaintiff Stephen Edmond, Jr. (referred to as "Edmond, Jr."); Plaintiff Keland Gipson (referred to as "Gipson"); Plaintiff Reginald Hogg (referred to as "Hogg"); Plaintiff Jimmy Kuhn (referred to as "Kuhn"); Plaintiff Simone Latu (referred to as "Latu"); Plaintiff Justin Lewis (referred to as "Lewis"); Plaintiff Hector Salazar (referred to as "Salazar"); Plaintiff Vehikite Taulaki (referred to as "Taulaki"); Plaintiff Hafoka Olie (referred to as "Olie"); Plaintiff Godfrey Williams (referred to as "Williams") and Plaintiff Teddy Woods (referred to as "Woods") bring this action under 29 U.S.C. § 2104(a)(5) individually against GPP as successor to LES.

## I. Nature of Suit

1.     Rose's claims—and the claims of Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods—arise under the WARN Act.

2.     The WARN Act "provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs[;] [a]dvance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

3.     LES violated the WARN Act by ordering a plant closing or mass layoff before "the end of a 60-day period after … serv[ing] written notice of such" plant closing or mass layoff to each affected employee, including Rose and other similarly situated current and/or former employees. *See*, 29 U.S.C. § 2101(a); *see also*, *id*. at § 2101(a)(5) (defining "affected employee").

4.     GPP is a successor of LES under federal labor law—and therefore jointly and severally liable to Rose, Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams; Woods and the members of the putative class—for LES's violation of the WARN Act (including for statutory

attorney's fees) because (1) the company had notice of the claims against LES prior to acquiring its business or assets; (2) LES is unable to provide relief; (3) there has been a substantial continuity of business operations from LES to GPP; (4) GPP uses substantially the same facilities, machinery, equipment, methods of production, workforce and supervisory personnel that LES used; (5) the same jobs exist under substantially the same working conditions at GPP as they did at LES and (6) GPP produces the same products and provide the same services as LES did.

5.    Rose (sometimes referred to as the "Class Representative") brings this action under 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23 individually and on behalf of all similarly situated current and/or former employees (defined below) to recover back pay, employee benefits and attorney's fees under the WARN Act.

6.    Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods bring this action under 29 U.S.C. § 2104(a)(5) individually to recover back pay, employee benefits and attorney's fees under the WARN Act.

## II.  Jurisdiction & Venue

7.    This action arises under a federal statute, the WARN Act. 28 U.S.C. § 1331 (federal-question jurisdiction); *see also*, 28 U.S.C. § 1334; 29 U.S.C. § 2104(a)(5).

8. Venue is proper in this district and division because LES transacted business in this district and division and because GPP transacts business in this district and division. 29 U.S.C. § 2104(a)(5).

## III. Parties

9. Rose is an individual who resides in Brazoria County, Texas and who was employed by LES.

10. Boyd is an individual who resides in Gregg County, Texas and who was employed by LES.

11. Castaneda is an individual who resides in Webb County, Texas and who was employed by LES.

12. Edmond is an individual who resides in Gregg County, Texas and who was employed by LES.

13. Edmond, Jr. is an individual who resides in Smith County, Texas and who was employed by LES.

14. Gipson is an individual who resides in Smith County, Texas and who was employed by LES.

15. Hogg is an individual who resides in Smith County, Texas and who was employed by LES.

16.     Kuhn is an individual who resides in Harrison County, Texas and who was employed by LES.

17.     Latu is an individual who resides in Tarrant County, Texas and who was employed by LES.

18.     Lewis is an individual who resides in Montgomery County, Texas and who was employed by LES.

19.     Salazar is an individual who resides in Webb County, Texas and who was employed by LES.

20.     Taulaki is an individual who resides in Tarrant County, Texas and who was employed by LES.

21.     Olie is an individual who resides in Tarrant County, Texas and who was employed by LES.

22.     Williams is an individual who resides in Harris County, Texas and who was employed by LES.

23.     Woods is an individual who resides in Harrison County, Texas and who was employed by LES.

24.     GPP is an Oklahoma limited liability company that may be served with process by serving its registered agent:

Northwest Registered Agent, LLC
5900 Balcones Drive, Suite 100
Austin, Texas 78731

Alternatively, if the registered agent of GPP cannot with reasonable diligence be found at the company's registered office, GPP may be served with process by serving the Texas Secretary of State. *See*, Tex. Bus. Org. Code §§ 5.251-5.254; *see also*, Tex. Civ. Prac. & Rem. Code § 17.026.

25.    An allegation that GPP committed any act or omission should be construed to mean the company's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification or approval of GPP or was done in the normal course and scope of employment of GPP's officers, directors, vice-principals, agents, servants or employees.

## IV.  Facts

26.    LES was an oilfield services company.

27.    LES did business in the territorial jurisdiction of this Court.

28.    LES employed Rose from September 2020 to May 15, 2021.

29.    LES employed Boyd from October 2017 to May 15, 2021.

30.    LES employed Castaneda from May 2017 to May 15, 2021.

31.    LES employed Edmond from September 2020 to May 15, 2021.

32.     LES employed Edmond, Jr. from March 2021 to May 15, 2021.

33.     LES employed Gipson from February 2018 to May 15, 2021.

34.     LES employed Hogg from May 2017 to May 15, 2021.

35.     LES employed Kuhn from March 2017 to May 15, 2021.

36.     LES employed Latu from August 2018 to May 15, 2021.

37.     LES employed Lewis from September 2020 to May 15, 2021.

38.     LES employed Salazar from August 2017 to May 15, 2021.

39.     LES employed Taulaki from July 2019 to May 15, 2021.

40.     LES employed Olie from August 2018 to May 15, 2021.

41.     LES employed Williams from June 2018 to May 15, 2021.

42.     LES employed Woods from February 2018 to May 15, 2021.

43.     When LES employed Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods, the company had one hundred (100) or more employees (excluding part-time employees) or one hundred (100) or more employees who in the aggregate work at least 4,000 hours per week (exclusive of overtime hours).

44.     LES employed Rose as an electrical technician.

45.     LES employed Boyd as a fluid technician.

46.     LES employed Castaneda as a service supervisor.

47.    LES employed Edmond as a supervisor.

48.    LES employed Edmond, Jr. as an equipment operator.

49.    LES employed Gipson as a supervisor.

50.    LES employed Hogg as a service supervisor.

51.    LES employed Kuhn as an electronics technician.

52.    LES employed Latu as an hydraulic equipment operator.

53.    LES employed Lewis as a mechanic.

54.    LES employed Salazar as a field supervisor.

55.    LES employed Taulaki as an hydraulic equipment operator.

56.    LES employed Olie as an equipment operator.

57.    LES employed Williams as a field supervisor.

58.    LES employed Woods as an environmental health and safety representative.

59.    During their employment with LES, the primary duties of Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods required travel from point to point.

60.    During their employment with LES, the primary duties of Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki;

Olie; Williams and Woods involved work outside of the company's regular employment sites.

61.    During their employment with LES, Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods were outstationed.

62.    For purposes of the WARN Act, LES employed Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods at the company's facility located in Longview, Texas (referred to as "the Longview Facility") and at the facility located in Oklahoma City, Oklahoma (referred to as "the Oklahoma City Facility"), and it employed other similarly situated current and/or former employees at those facilities and at other facilities (referred to as "the Facilities"). *See*, 20 C.F.R. § 639.3(i)(6); *see also*, 20 C.F.R. § 639.3(i)(8) ("The term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the [WARN] Act to provide notice is not acceptable."); *see also*, 20 C.F.R. §§ 639.3(i)-(j).

63.    LES terminated Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods on May 15, 2021, without cause.

64.     The terminations of Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods were part of a plant closing ordered by LES because it involved the permanent or temporary shutdown of the Facilities and resulted in (1) the termination of; (2) a layoff exceeding six (6) months for; and/or (3) the reduction of hours of work by more than fifty percent (50%) during each month of any six-month period for at least fifty (50) of LES's employees (excluding part-time employees) at the Facilities during any thirty-day period.

65.     Alternatively, the terminations of Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods were part of a mass layoff ordered by LES because it resulted in (1) the termination of; (2) a layoff exceeding six (6) months for; and/or (3) the reduction of hours of work by more than fifty percent (50%) during each month of any six-month period for either (1) at least five hundred (500) of LES's employees (excluding part-time employees) at the Facilities or (2) at least thirty-three percent (33%) of LES's employees (excluding part-time employees) at the Facilities, which is at least fifty (50) employees (excluding part-time employees) during any thirty-day period.

66.     LES did not provide Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods or any

other employee who may have been reasonably expected to be affected by the plant closing or mass layoff ("affected employees") with advance written notice of the plant closing or mass layoff in violation of 29 U.S.C. § 2102(a).

67.    LES did not provide Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods or any other affected employee the pre-termination wages and benefits required by the WARN Act.

68.    LES was—and GPP as LES's successor is—liable to any affected employee who suffered an employment loss as a result of the plant closing or mass layoff ordered by the company, including Rose, for (1) back pay for each day of violation (at a rate of compensation not less than the higher of the average regular rate received by each affected employee during the last three years of the employee's employment or the final regular rate received by such employee) and (2) benefits under an employee benefit plan described in 29 U.S.C. § 1002(3). *See also*, 29 U.S.C. § 2104(a)(7).

69.    LES was—and GPP as LES's successor is—liable to any affected employee who suffered an employment loss as a result of the plant closing or mass layoff ordered by the company, including Rose, for his reasonable attorney's fees. *See*, 29 U.S.C. § 2104(a)(6).

70.    All former employees of LES who were terminated without cause or suffered other employment loss as part of or as the result of a plant closing or mass layoff ordered by the company on or about May 15, 2021, and within thirty (30) days of that date and who were not provided with advance written notice of the plant closing or mass layoff as required by the WARN Act are similarly situated to Rose. *See*, 29 U.S.C. § 2104(a)(5).

71.    On October 26, 2021, LES filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code.

72.    LES's assets were transferred to other entities, including GPP.

73.    When those assets were transferred, GPP had notice of the WARN Act claims against LES.

74.    LES is unable to provide relief to Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods or the members of the putative class.

75.    There has been a substantial continuity of business operations from LES to GPP.

76.    GPP uses substantially the same machinery and equipment as LES used; in fact, LES's logo is still visible on many of the machines:



77. GPP uses the same methods of production as LES used.

78. GPP uses substantially the same workforce as LES used; for example, Wendell Martin, a former LES operations manager and current GPP service line manager explained on his LinkedIn profile that he was "getting the band back together[,]" referring to the rehiring of former LES employees by GPP:



79.    GPP uses the same supervisory personnel as LES used; for example, GPP hired Wendell Martin, a former LES operations manager, to work as its service line manager.

80.    The same jobs exist under substantially the same working conditions at GPP as they did at LES.

81.    GPP produces the same products and/or services as LES did.

### V. Successor Liability of GPP Under Federal Labor Law

82.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods adopt by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

83.    The successorship doctrine applies to WARN Act claims. *See*, *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 390-91 (affirming jury's finding of successor liability in WARN Act case).

84.    GPP is a successor of LES under federal labor law—and therefore jointly and severally liable to Rose, the other plaintiffs and the members of the putative class—for LES's violation of the WARN Act (including for statutory attorney's fees) because (1) the company had notice of the claims against LES prior to acquiring its business or assets; (2) LES is unable to provide relief; (3) there has been a substantial continuity of business operations from LES to GPP; (4) GPP uses substantially the same facilities,

machinery, equipment, methods of production, workforce and supervisory personnel that LES used; (5) the same jobs exist under substantially the same working conditions at GPP as they did at LES and (6) GPP produces the same products and provide the same services as LES did. *See*, *NLRB v. Laborers Int'l Union*, 882 F.2d 949, 955 (5th Cir. 1989) (successor under federal labor law is jointly and severally liable for damages attributable to predecessor's conduct).

85.     Since GPP has not requested any form of relief under the Bankruptcy Code, the determination of whether GPP is liable to Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods as a successor under federal labor law has no effect on LES's bankruptcy estate. *See*, *Laborers Int'l Union*, 882 F.2d at 955.

## VI.  Count One—
### Failure to Provide Advance Written Notice of Plant Closing or Mass Layoff in Violation of 29 U.S.C. § 2102(a)

86.     Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods adopt by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

87.     As explained above, LES employed Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods at various times and in various positions.

88.     When LES employed Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods, the company was covered by the WARN Act.

89.     When LES employed Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods, there was a plant closing or mass layoff at the Facilities that resulted in an employment loss to Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams, Woods and to other affected employees.

90.     Under the WARN Act, LES was required to provide Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams, Woods and any other affected employees with advance written notice of the plant closing or mass layoff. *See*, 29 U.S.C. § 2102(a).

91.     LES did not provide Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams, Woods or the other affected employees with advance written notice of the plant closing or mass layoff as required by the WARN Act. *See*, 29 U.S.C. § 2102(a).

92.     LES did not provide Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams, Woods or any

other affected employee the pre-termination wages and benefits required by the WARN Act.

93.    By failing to provide Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams, Woods and the other affected employees with advance written notice of the plant closing or mass layoff and by failing to them pay pre-termination wages and benefits, LES violated the WARN Act. *See*, 29 U.S.C. § 2102(a).

94.    As a result of the WARN Act violation(s) described above, LES was— and GPP as LES's successor is—liable to Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams, Woods for back pay, employee benefits and attorney's fees.

### VI.  Count Two—
### Class Action Allegations Under Fed. R. Civ. P. 23
### for Violations of the WARN Act

95.    Rose adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

96.    Rose, the Class Representative, brings Count One against GPP as LES's successor under Fed. R. Civ. P. 23 on behalf of the following class of persons:

> All former employees of LES who were terminated without cause or suffered other employment loss as part of or as the result of a plant closing or mass layoff ordered by the company on or about May 15, 2021, and within thirty (30)

– 19 –

days of that date and who were not provided with advance
written notice of the plant closing or mass layoff as required
by the WARN Act (referred to as the "WARN Act Class").

97.    The claims of the WARN Act Class, if certified for class-wide treatment,
will be pursued by all similarly situated persons who do not affirmatively opt-out of the
class.

98.    The members of the WARN Act Class are so numerous that joinder of all
members is impracticable; the exact number of putative class members is unknown at
the present time but should be over one hundred (100).

99.    There are numerous questions of law and fact common to the WARN Act
Class, including:

    a.    whether the members of the WARN Act Class were employees of LES
        who worked at the Facilities;

    b.    whether LES provided the members of the WARN Act Class with
        advance written notice of a plant closing or mass layoff ordered by the
        company that resulted in their termination without cause or other
        employment loss;

    c.    whether LES failed to pay the members of the WARN Act Class the
        pre-termination wages and benefits required by the WARN Act; and

    d.    whether GPP is jointly and severally liable to the members of the
        WARN Act Class as successor to LES under federal labor law.

100.    Rose's claims are typical of the claims of the WARN Act Class because
Rose and the members of the WARN Act Class all worked at the Facilities and were all
part of the same plant closing or mass layoff that resulted in their termination without

cause or other employment loss and that was ordered by LES without advance written notice to Rose and the members of the WARN Act Class; in other words, Rose's claims and the claims of the WARN Act Class arise out of a common course of conduct of LES and are based on the same legal and remedial theories.

101.    Rose will fairly and adequately protect the interests of the WARN Act Class and has retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex employment litigation (including class actions, collective actions, and multidistrict litigation); Rose and his counsel are committed to prosecuting this action vigorously on behalf of the WARN Act Class, have the financial resources to do so and do not have interests that are contrary to or that conflict with those of the proposed class.

102.    Class certification of the WARN Act Class is appropriate under Fed. R. Civ. P. 23 because questions of law and fact common to the putative class members predominate over any questions affecting only individual members of the class; adjudication of these common issues in a single action has important and desirable advantages of judicial economy, and there are no unusual difficulties likely to be encountered in the management of this case as a class action.

103.    The class action mechanism is superior to any alternatives that may exist for the fair and efficient adjudication of these claims because:

    a.   proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort and judicial resources;

    b.   a class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate;

    c.   class treatment is the only realistic means by which the WARN Act Class can effectively litigate against a large, well-represented corporate defendant like GPP;

    d.   in the absence of a class action, GPP would be unjustly enriched because the company would be able to retain the benefits and fruits of its predecessor's numerous violations of the WARN Act; and

    e.   numerous individual actions would place an enormous burden on the courts as they will be forced to take duplicative evidence and decide the same issues relating to LES's conduct and GPP's liability as its successor over and over again.

104.    LES and GPP have acted or refused to act on grounds generally applicable to the WARN Act Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to each class as a whole; prosecution of separate actions by members of the WARN Act Class would create the risk of inconsistent or varying adjudications with respect to individual members of the WARN Act Class that would establish incompatible standards of conduct for LES.

105.    Rose will send notice to all members of the WARN Act Class to the extent required by Fed. R. Civ. P. 23.

## VII.  Count Three—
### Attorney's Fees Under 29 U.S.C. § 2104(a)(6)

106.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods adopt by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

107.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods are authorized to recover attorney's fees on their claims by statute. 29 U.S.C. § 2104(a)(6).

108.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods have retained the professional services of the undersigned attorneys.

109.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods have complied with the conditions precedent to recovering attorney's fees.

110.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods have incurred or may incur attorney's fees in bringing this lawsuit.

111.    The attorney's fees incurred or that may be incurred by Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods were or are reasonable and necessary.

112.    LES is liable to Rose, both individually and on behalf of the WARN Act Class, and Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods for attorney's fees by reason of the WARN Act violations described above. *See*, 29 U.S.C. § 2104(a)(6).

## VIII.  Relief Sought

113.    Rose; Boyd; Castaneda; Edmond; Edmond, Jr.; Gipson; Hogg; Kuhn; Latu; Lewis; Salazar; Taulaki; Olie; Williams and Woods demand the following relief:

   a.  an order allowing this action to proceed as a class action under 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23;

   b.  an order appointing Rose representative of the WARN Act Class;

   c.  an order appointing MOORE & ASSOCIATES class counsel;

   d.  an incentive award for Rose for serving as class representative if the Court allows this action to proceed as a class action under 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23;

   e.  judgment against GPP in Rose's favor, both individually and on behalf of the WARN Act Class, and in the other plaintiffs' favor for back pay, employee benefits and attorney's fees, plus interest and costs; and

   f.  all other relief and sums that may be adjudged against GPP in Rose's favor, both individually and on behalf of the WARN Act Class, and in the other plaintiffs' favor.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739


By: _____

Melissa Moore
Tex. Bar No. 24013189
melissa@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFFS**